IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

*IN RE HAGUE CHILD ABDUCTION APPLICATION*

| | |
|---|---|
| Vladyslav Dubikovskyy ) | |
| ) | |
| Petitioner, ) | Case No. 2:20-cv-4207 |
| ) | |
| v. ) | |
| ) | |
| Elena Goun, ) | |
| ) | |
| Respondent. ) | |

## VERIFIED PETITION FOR RETURN OF CHILD UNDER THE HAGUE CONVENTION

COMES NOW Vladyslav Dubikovskyy ("Petitioner") and for his Verified Petition for Return of Child under the Hague Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, and the International Child Abduction Remedies Act, 42 U.S.C. 11601 *et. seq.*, states as follows:

**1.0 PREAMBLE**

1.1 This petition is brought by Petitioner against Elena Goun née Korotkova ("Respondent") under The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the "Hague Convention" or the "Convention"),[1] and the Federal International Child Abduction Remedies Act, 42 U.S.C. § 11603(b) ("ICARA").

1.2 The Hague Convention came into effect for the United States of America on July 1, 1988,

---

[1] A true and correct copy of the Hague Convention is available as Exhibit A to this Petition. This copy is provided, for ease of reference, from the official website of The Hague Conference on Private International Law, *available at* https://assets.hcch.net/docs/e86d9f72-dc8d-46f3-b3bf-e102911c8532.pdf.

and was ratified between the United States and Switzerland on the same day.[2] Switzerland is the country of habitual residence of the child that is the subject of this action.

1.3   The objects of the Hague Convention are:

   1.3.1   To secure prompt return of children wrongfully removed to or retained in any contracting state (Article 1(a)); and

   1.3.2   To ensure that rights of custody and of access under the law of one contracting state are respected in the other contracting states (Article 1(b)).

1.4   The child for whom this Petition is filed is M.D., a minor child, born on ▆▆▆▆, 2008 (age 12 years) in Berkeley, CA, who will be sixteen years of age on ▆▆▆▆, 2024. *See* Ex. B at 16 (Application for Assistance Under the Hague Convention, filed with the Swiss Central Authority on September 9, 2020 ("Hague Application"), attaching M.D.'s birth certificate). M.D. is a citizen of the United States of America and a permanent resident of Switzerland.

2.0   **JURISDICTION AND VENUE**

2.1   This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a), which provides that "[t]he courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the [Hague] Convention."

2.2   A decision of this Court under the Hague Convention and ICARA is not a determination of M.D.'s custody arrangements. Rather, "[t]he Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." *See* 22 U.S.C. § 9001(b)(4); Hague Convention, art. 19.

---

[2] *See* U.S. Hague Convention Treaty Partners, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html.

2.3  ICARA, at 22 U.S.C. § 9003(b), contains a venue provision, which states that any person initiating judicial proceedings under the Hague Convention for the return of a child may file a petition for relief in "any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."

2.4  Venue is proper here because the child is located here. On information and belief, Petitioner believes that M.D. is currently physically located within the jurisdiction of this Court, specifically in Columbia, Missouri.

2.5  In support of this Petition, Petitioner is also filing herewith an Informational Brief that explains the purpose and mechanics of the Hague Convention and ICARA.

3.0  **STATUS OF THE PETITIONER, RESPONDENT, AND CHILD, AND CONCEALMENT, REMOVAL, AND RETENTION OF CHILD BY RESPONDENT**

3.1  Petitioner is M.D.'s natural father. *See* Ex. B at 16. As the child's natural father, Petitioner has rights of custody of M.D. within the meaning of Articles Three and Five of the Hague Convention.

3.2  Petitioner is a citizen of the Ukraine and a permanent resident of Switzerland.

3.3  Respondent is a citizen of Russia.

3.4  Petitioner and Respondent were married in Berkeley, California on December 16, 2007. *See* Ex. B at 15 (Marriage Certificate).

3.5  M.D. was born in Berkeley, California. *See* Ex. B at 16.

3.6  Petitioner, Respondent, and M.D. lived in California until August 21, 2011, when they moved to Switzerland so that Respondent could take a position as an associate professor of chemistry at the Swiss Federal Institute of Technology in Lausanne.

3.7  Prior to the facts giving rise to this Petition, Petitioner, Respondent, and M.D. had resided

3

near Lausanne, Switzerland continually since August 2011.

3.8   In April of 2018, Petitioner and Respondent agreed to preliminary terms that would govern the dissolution of their marriage (the "Conciliation Terms"). *See* Ex. C (original and certified translation of minutes from April 23, 2018 Conciliation Hearing Before the Civil Court of Appeals).

3.9   Pursuant to the Conciliation Terms, Petitioner and Respondent agreed to a system of alternating custody of M.D. M.D. would be with Petitioner every other week from Friday at 7 p.m. to Thursday at 12 p.m., and M.D. would be with Respondent every other week from Thursday at 12 p.m. to Friday at 7 p.m. M.D. would then spend half of her school vacations with each parent, and would alternate the following pairs of holidays with each parent: (1) Christmas and New Year's Day; (2) Easter and Ascension Day; and (3) Pentecost and the Day of Federal Fast. Petitioner and Respondent also agreed to communicate adequately on matters relating to M.D. *See id.* at 8.

3.10  In April of 2019, Respondent petitioned the Swiss court to modify the Conciliation Terms to grant her sole custody of M.D., which the civil court and an appeals court denied. *See* Ex. D at 14 (original and certified translation of August 24, 2020 Court Order Granting Petitioner *de facto* Custody ("August 24 Court Order"), noting the Petitioner's April 2019 petition and subsequent court denials).

3.11  On July 1, 2020, Petitioner and Respondent agreed on how to apportion their time with M.D. during the child's 2020 summer vacation: Petitioner would spend the three weeks of July 3 to July 24 with M.D., and Respondent would be with M.D. for the four weeks of July 24 to August 21. Petitioner and Respondent specifically agreed that because of the COVID-19 global pandemic, they would refrain from any air travel during this time. The parties specifically agreed that North America was a "no-go" area.

4

3.12 Despite this agreement, on July 25, 2020, Respondent traveled with M.D. to the United States.

3.13 On July 28, 2020, Petitioner learned that Respondent and M.D. had traveled to the United States.

3.14 On July 30, 2020, Petitioner petitioned the District Court of Lausanne to (1) order Respondent to return with M.D. to Switzerland, (2) order Respondent to hand over M.D.'s passport and other identifying information to Petitioner, (3) prohibit Respondent from taking M.D. out of Switzerland, and (4) grant Petitioner the exclusive right to determine M.D.'s place of residence. *See* Ex. D at 14.

3.15 In response to Petitioner's July 30 petition, Respondent informed the District Court of Lausanne that she expected to return to Switzerland with M.D. on August 21. *See id.*

3.16 On August 4, 2020, the court ordered Respondent to return M.D. to Switzerland on a date that would allow M.D. to start her school year in the classroom rather than by remote-learning ("August 4 Court Order"). *See id.* Because at the time of the order Switzerland had in place a mandatory COVID-related ten-day quarantine period for any individuals returning from the United States, and because M.D.'s school year was scheduled to commence on August 24, the order effectively required Respondent to return M.D. to Switzerland by August 14.

3.17 On August 13, Respondent requested that the Swiss court "transfer" M.D.'s "residence to the United States of America because of [Respondent's] move for professional reasons." *Id.* Respondent had taken a position at the University of Missouri. *Id.* at 15. This request directly contradicted Respondent's earlier representation to the court that she and M.D. would return to Switzerland on August 21.

3.18 Respondent failed to return M.D. to Switzerland on August 14, in violation of the August

5

4 Court Order.

3.19 Respondent failed to return M.D. to Petitioner on August 21, in violation of the parties' agreement made in accordance with the Conciliation Terms.

3.20 On August 24, 2020, the Swiss court denied Respondent's August 13 motion and granted Petitioner's July 30 motion, ordering Respondent to return M.D. to Switzerland and granting Petitioner the exclusive right to determine M.D.'s place of residence. *See id.*

3.21 The Hague Convention states that the retention of a child is wrongful where it constitutes a breach of parental custody rights as defined by the laws of the State in which the child was an habitual resident before the child's wrongful retention. *See* Hague Convention, art. 3, art. 5.

3.22 Petitioner retains full parental responsibility rights under Swiss Law, and those rights have been breached. Section Three, Article 296 of the Swiss Civil Code states that "[u]ntil such time as they attain the age of majority, children remain the joint parental responsibility of their father and mother." *See* Ex. B at 13 (excerpts of Swiss Civil Code). Article 301 states that parental responsibility "includes the right to decide on the child's place of residence," and that if one parent wishes to change the child's place of residence to a location outside of Switzerland, the consent of the other parent is required. *Id.*

3.23 In addition, at the time M.D. was removed and retained from Petitioner's care, Petitioner was actually exercising custody of M.D. within the meaning of Articles Three and Five of the Hague Convention, as well as within the meaning of the Swiss Code. During the periods Petitioner had custody of M.D. pursuant to the Conciliation Terms, Petitioner would drive M.D. to and from school and her after school activities, supervise her homework, and facilitate M.D.'s physical and cultural development, including but not

6

limited to introducing M.D. to various sports, bringing M.D. to museums and other cultural sights, and instilling in M.D. a passion for reading. *See* Ex. B at 64 (August 16, 2020 Letter from Sean Carroll); *id.* at 65 (September 1, 2020 Letter from Thierry Bochud).

3.24 Switzerland is M.D.'s country of habitual residence within the meaning of Article Three of the Hague Convention. Switzerland was her continual home for many years immediately prior to her wrongful removal and retention.

3.25 Petitioner has not seen M.D. since she was wrongfully removed from Switzerland. Since July 31, Respondent has prevented Petitioner from having any direct communication with M.D.

3.26 Respondent's abduction and retention of the child is wrongful within the meaning of Article Three of the Hague Convention because Petitioner's rights of custody were, and continue to be, violated.

3.27 Respondent is now and has been wrongfully retaining the child from Petitioner and the child's country of habitual residence. Respondent is believed to be currently living with the child at 2850 W. Mill Creek Terrace, Columbia, MO 65203.

4.0 **HAGUE APPLICATION**

4.1 On September 9, 2020, Petitioner completed an application for assistance with the Swiss Central Authority to secure the return of M.D. under the Hague Convention—*i.e.*, his Hague Application—which is incorporated into this Petition herein. *See* Ex. B.

4.2 On September 14, 2020, the Swiss Central Authority submitted the Hague Application to the United States Department of State.

4.3 Petitioner's counsel has contacted Respondent and Respondent's attorney in order to resolve these difficult child custody issues. The parties have been unable to reach a

7

Case 2:20-cv-04207-NKL   Document 1   Filed 10/23/20   Page 7 of 10

resolution.

## 5.0   CLAIMS AND PRAYER FOR RELIEF

5.1   Petitioner reincorporates and re-alleges by reference each of the foregoing paragraphs as if fully set forth herein.

5.2   Respondent's continued retention of M.D. in the United States constitutes an unlawful retention of M.D. under the Hague Convention and ICARA, because M.D.'s country of habitual residence is Switzerland.

5.3   Petitioner requests the following relief issue either immediately or at the expedited final hearing in this matter, or at such other time as may be appropriate:

    5.3.1   The Court order that Respondent return M.D. to Petitioner or to an agent of Petitioner pursuant to the attached Proposed Order, so that M.D. can return to her country of habitual residence, Switzerland; and

    5.3.2   The Court order that M.D.'s passport and all other documents necessary for her departure to Switzerland be immediately returned to Petitioner; and

    5.3.3   The Court order Respondent to pay Petitioner's necessary expenses including court costs, legal fees, any and all care expenses, and any transportation costs incurred for M.D.'s return, pursuant to Article 26 of the Convention and 22 U.S.C. §9007, and upon final submission of those costs, fees, and expenses, which Petitioner may amend from time-to-time, reserving jurisdiction for the taxation of additional expenses incurred after that time.

Dated: October 23, 2020	Respectfully Submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Christopher Schmidt*
Christopher J. Schmidt
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Suite #3600
Saint Louis, MO 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)
cjschmidt@bclplaw.com

*Attorney for Petitioner*

# **VERIFICATION AND DECLARATION**

VLADYSLAV DUBIKOVSKYY, of lawful age, being first duly sworn upon oath states:

I verify that I am familiar with the factual statements contained in the foregoing Petition and that the factual statements contained in it are true and correct to my best recollection. I state under penalty of perjury under the laws of the United States of America and Switzerland that the foregoing factual statements are true and correct.

Affirmed this 23rd day of October, 2020.

_____
Petitioner Vladyslav Dubikovskyy

10

Case 2:20-cv-04207-NKL    Document 1    Filed 10/23/20    Page 10 of 10